Good morning, your honors. Jill Hunt on behalf of Eduardo Perez and Nancy Viznia, appellants, and on behalf of Robert Baylis, who's the appellee on the other issue, all three are present here in court today. The statements and actions by Mr. Perez and Viznia were matters of public concern. The were reporting because their statements in support of Mr. Baylis included statements of a collusive and corrupt administration, misconduct by management, a long investigation that was impacting morale in the department. Corrupt counsel? Yes. What was the corruption? The collusion between mental health administration and the investigators in trying to fire Robert Baylis. Usually when you talk about corruption, you're talking about bribery or theft or something a little more sinister than just agreement between people to proceed in a particular manner. Well, I think that the corruption is a very serious matter to Mr. Baylis, who was first suspended and eventually terminated based on the issues found in the investigation. If, which I posit is what was happening, was that the administration had hired investigators to come up with a way to get rid of Mr. Baylis, that's corruption. What's your case authority to support your argument that hiring someone to orchestrate a termination is corruption? I have no case that supports the issue that that's corruption. The other issues that were the statements of Mr. Perez and Ms. Viznia were that the long investigation was impacting morale in the department and that they were basically complaining about what in turn became a violation of Mr. Baylis' due process rights up to their superiors. This impacts the public because the public has a right to know when detention services who provide service to the public is being affected. Further, the unfair and collusive actions taken by administration ended up depriving the department of a seasoned and longstanding county employee who is very competent in his job duties. The public also has an interest in the efficient operation of services being provided to the public. I would like for you, if you can, to enumerate anything that either of these two employees that you represent on appeal, as an appellant, said in connection with the workplace that did not represent anything more than the state of their thinking. I'm not talking about something that just says, I think somebody is being treated unfairly. I don't care about anybody's state of mind. I want to know where you can point to any representation of fact that either of these parties made about the workplace. By Mr. Perez, that he was concerned about how the... I don't care about his being concerned. That's his mindset. You see what I mean? I see what you mean. It doesn't do me any good to say, I am concerned about the rain outside. That doesn't get us any place. Do you understand my question? I believe so. You want... I want to know what they represented or asserted as a matter of objective truth, other than their own state of mind. That the investigations were going on longer than they should have been going on. All right. Now, that, I presume, is their judgment about what should happen? Well, an investigation... Should go on or shouldn't go on? It shouldn't take a year. Who says it shouldn't? Well, when you have a relatively simple issue to get to the bottom of, and the investigation is going on a year... If I boldly assert that it should, now we're even. Right? Yes. So, you've got one guy saying it shouldn't go on for a year, another guy saying it should. Now we're even. What else did they say about this workplace, other than their own state of mind about judgment about who's good and who's bad? That the investigators were fraternizing with the employees which they were supposed to be investigating, and that that was impacting the veracity of the investigation. Were any statements made regarding how the length of the investigation was affecting office morale? Yes. In particular, Mr. Perez made those statements twice. He made them in the November 1999 meeting to all of his supervisors that the investigation was going on way too long and that it appeared to be biased, and it was affecting morale. It was also stated in the letter that was drafted by Mr. Perez and Ms. Visnia that they requested that the investigation be brought to a speedy conclusion. And most significantly, it was brought to the attention by Ms. Visnia in her grievance that was filed with the personnel department in which she felt that the investigation was creating a hostile work environment, low staff morale for the majority of the staff, and a fear of impending violence. You know, First Amendment protect... Yes? This investigation of this gentleman was precipitated by a complaint of a female worker about his comments. Yes. None of them, neither of your clients, were present on any of those occasions or had anything to say about the merits of the complaint that this woman made in connection with your other clients' remarks. There were actually two complaints that were being investigated. One was the issue of the woman's complaints of sexual harassment. The other was the issue of Claudia Lake's and there were numerous witnesses to what was going on. And that was a big issue that Mr. Perez and Ms. Visnia were complaining about because they actually had witnessed what had happened. And then they saw the investigators having lunch with the people they were supposed to be investigating. They saw the investigators, you know, offering to read the dissertation. And they inferred that there was some kind of collusion going on because of the relationship between the investigators and the employees. And they were seeking to just bring this to light. They weren't complaining that Mr. Bayless was being investigated. The complaints were about how the investigation was prolonged and how it was taking place. And they just sought to bring these issues to light for their supervisors. You know, it's important to look at not only the context, the content of what Mr. Perez and Ms. Visnia were saying, but also the form and the context in which they were doing it. And what's the adverse employment action that they suffered? They suffered, they were not promoted. What evidence is there in the record to show that that's causally connected to the exercise of their free speech rights? If you look at the record, the time frame in which these actions occurred shows the causal connection. Further, if you look to the... What shows the causal connection? What you're saying is post hoc ergo propter hoc. After this, because of this. I mean, it's all you're saying is that the timing certainly could give rise to that inference, but that's all it is. There could be an inference that could be drawn or not, but that's all there is. Well, there's that, but there's also the testimony of Mr. Oprendek in which he was required to present evidence as to why the actions they took were the actions they took in terms of who they hired. And it came out at trial with Mr. Oprendek's testimony that one, he had destroyed the interview records specifically in regards to Mr. Perez and Ms. Visnia, and also that he had concocted for the purposes of litigation some kind of pass-fail score sheet that never existed during the actual interview. He came out as a big liar at trial. And between the time frame in which they presented this evidence, the actions which were taken by them, the non-promotion, they applied for four different promotions, and they were continuously rejected. Was there any indication that they were not qualified for the promotion? No. Both are extremely well qualified in terms of their status and their education with the county. The county will argue that Ms. Visnia wasn't qualified because she didn't have a California license, but that was specifically not a requirement, and that came out at trial as well for a supervisory position. The supervisors that were hired into these positions that Mr. Perez and Ms. Visnia were applying for were in fact not qualified, and that was another issue of truth that came out during trial. The one, there was testimony that both had supervisory experience, I believe it was Tasha Arnston and John Kapsavage, yet when you went to the resumes to look at their supervisory experience, none was there. So while the people testifying at trial said, oh, we hired them because they were more qualified, they had supervisory experience, when you looked at the resumes, the supervisory experience was not on the resumes. So that, again, was more evidence that was concocted by the county to support their position that that was in turn the reason that they... Counsel, the people who made the decisions regarding these supervisory positions, were they aware of Mr. Perez's and Ms. Visnia's involvement in the complaints about the investigation? Yes, they were involved in that. These complaints were first taken to their immediate supervisor, and as county employees, when the concerns weren't addressed, they kept going further and further up the chain of command to the point at which they called, they requested a meeting with the head of the Department of Mental Health, John Ryan. In that meeting, John Ryan, Ted Kubota, and Larry Ogilvie, who were both in charge of hiring for the supervisor, for, I believe, one or two of the supervisory positions, were in this meeting where they heard everything. Also, their complaints were being presented in the forms of letters and grievances through personnel and, you know, an inference can be made that, you know, when they were given to personnel, to Kay Akubo and personnel who worked directly for Ted Kubota, Ted Kubota was seeing those grievances and their complaints. Further, there was testimony in court that all three of the supervisors were aware of the fact that Perez and Visnia were complaining in support. All right, Counsel, you might want to save some time to respond on the cross-appeal.  Thank you. Good morning. I'm Chris Lockwood for the Defendant's Appellant at the Baylis and Cross Appellees. I will get to those issues. I want to start off actually addressing the Baylis case, however. A few things. I had a supplemental submission because there is a pending Supreme Court case which, at least potentially, is directly relevant to the issues. The Garcetti case, which was argued on October 12th for the Supreme Court. The issue presented, and according to the transcript of the argument, the key issue addressed is whether, when an employee makes speech as part of the employee's job, whether that is protected at all by the First Amendment. If the Supreme Court rules that, then there is no protected speech by Baylis in the first place. And I suggest the Court simply defer a decision until the Supreme Court rules that. You think that case, if, you know, it says if the employee makes speech as part of his job, what does that mean exactly? Anything you say on the job is not protected speech? No, not on the job. It's when you're doing something, for example, I'm being paid to do the speech today. In the case in the Garcetti speech, it was the district attorney who was being paid to make the speech. For Baylis, he was giving the grand jury testimony as part of his job. So it's not incidental things. It is, you are paid to make the speech. The contention in that case is that that kind of speech is not protected, and that's the issue being addressed by the Court. So if the Court agrees with it, I think the Baylis case is over at that point. Well, is it your position that part of his job is to testify in front of the grand jury? Yes. It's a routine part. The record, I cited in the brief, it's a routine part of the, the part of his job. It's done routinely. The reports are taken back routinely. Routinely? Yes. You testify before the grand jury? It's about an annual thing. I'm sorry? It's around an annual type of thing. They do reports, and I'll give you the pages if you want those. It's a routine part of his job. Uh-huh. He was asked in advance to testify on these topics. He asked other people for support, evidence, so he could have the information when he testified. It was a direct part of his job.  Go ahead. Will, you, please. You mean the employer chooses who the grand jury is going to hear? Yes. I don't know the answer on that one. He was asked to appear because... Well, I know, but the grand jury normally decides who it's going to hear, instead of an employer saying, I'm going to hire you to testify in front of the grand jury, and I'm not going to hire anybody else to do it. You're the guy that's going to do it. Now, that's your job. Is that the way it works? You know, that issue was not addressed in the record. I frankly don't know the answer to that question.     All right. But your, your, your contention is that the Supreme Court's decision may have been made by the grand jury.    It's just that the grand jury has decided to hire me. And I think that it may have some impact on this because this guy was hired to testify in front of the grand jury. I'm saying that part of the job... Well, that's part of the job. ...was hired to do. That wasn't his exclusive duty. No, of course not. But from my perspective, it's normally the grand jury decides. They're not going to let somebody pick and choose what they're going to hear. I take it that under California law, they're required to inquire periodically into the conditions of confinement, right? Right. Okay. And the difference may be that, you know, for a prosecutor's office, the prosecutor chooses who presents to the grand jury, which is a little different scenario because then that person is hired and knows that part of his or her responsibility will be presentations to the grand jury. But if you are not a prosecutor, you're a run-of-the-mill employee, you don't, people aren't hired specifically to appear before the grand jury. I agree. I'm just suggesting deferring the case until that is decided. I have more issues I want to talk about. That's just actually one point. As to the Bayless case, one of the issues we've addressed back and forth in the briefs is whether there was retaliation. It's important to focus on the very narrow issue before the court. There was a motion in Limine granted to keep out liability or damages based on anything other than the decision where to place him on reinstatement. Everything else is barred by the statute of limitations. That was not cross-appealed. We're done with that. So the question then is, is the decision to put him in the position that he was put in when he was reinstated, and nothing else, retaliation for that? Now, counsel, at this point, there was a jury verdict in his favor. So you're asking us to the court gave judgment as a matter of law in the face of a jury verdict to the contrary. So that's the context in which we're assessing your arguments, right? I understand that. But this is the only facts that can support a verdict in favor of Bayless, because everything else the court already ruled is outside the statute of limitations. But the jury found retaliation. I understand that. Then we get to the only thing. So you have to, you know, in order for a judgment as a matter of law to be successful, you have to show that no reasonable juror could have found retaliation. Taking the facts into light, most favorable to Mr. Bayless, you have to convince us that no reasonable juror could have found retaliation, right? I agree. Okay. Okay. The only fact, though, on which they could have based it is the placement of him where they did when he was reinstated. Right. Nothing else is a partial basis. Part of proof of retaliation is that you disagree with the speech in the first place. It's not retaliation by definition if you disagree with what happened. There is no evidence that any of the defendants ever disagreed with any of the speech at issue. It's just not retaliation. If something happens. But you made that argument to the jury, right? Yes. And the jury didn't buy it, right? True. But the evidence has to be there to support the jury's verdict. There isn't any evidence on that basis. We have. Wasn't there evidence that after Mr. Bayless returned from his grand jury testimony during the time he was given a report regarding what he said at the grand jury that one of his supervisors got angry about what he said and asked him to put it in writing and went around asking other people to verify what he was saying? No. And that brings to a point I want to make. The representations that have been made in this case repeatedly are not accurate. And that's one of the major ones. But if the jury, the counsel, if the jury believed it, it's the jury's problems to determine who is credible, who's not credible. If the jury heard all of this evidence and thought that Mr. Bayless was telling the truth when he said his supervisor got angry and as a result when he was reinstated he was put in a less desirable position, how can we second guess that credibility determination by the jury? No, the point I was making is not the jury's assessment of the trial evidence. It's the briefs saying erroneously what the trial evidence was. As to the one statement you just talked about for Bayless, the record, not the briefs say something different. The record shows that there was not anything being upset about the testimony. It was that Bayless himself complained about the conduct of somebody else at the meeting and complained that he had been harassed at that meeting. And the investigation that occurred was in response to Bayless' complaint about how he was treated, not his testimony at the grand jury. I address this issue in reply to your question. Let me ask you this. Mr. Bayless did not testify at trial at all regarding the response to his grand jury testimony? What he testified to, let me find the right pages for you on this one. Okay. He testified that at that meeting, well, first of all, he was supposed to prepare a report, it's routine to do that again, and he didn't do it. And his supervisor complained that he hadn't done it, and he complained about the tone in which the request for him to do his job was done. Well, I'm talking about the testimony where he said that his supervisor got red in the face or started, raised his tone of voice at the meeting where the grand jury testimony was being discussed. Are you saying that that testimony was not given at trial? His testimony was. Yes or no? Was that testimony given at trial? He testified he was red in the face because of the delay in providing the report, not the content of the report. And that's the distinction I think is important to make. Okay. And where is that in the record? And I'm looking for it. I did, actually, Bayless filed a written grievance on this one, and I quoted it in one of the briefs. I'm trying to find that right now. Well, I'm talking about the trial testimony. I know. And I'm trying to find that right now. I actually quoted that in one of the two briefs because there's representation about that. I will find that. Let me cut back so that my co-counsel finds it. Okay. Because I do want to give you that one. Other issues I do want to talk about. I have limited time here. As to the question of whether for Perez and Wisnia the speech was protected, all we have here is a very much run-of-the-mill grievance. There's no public importance to anything going on here. Once again, it's important to define the issues to the real issues before the court. If you look at the second-amended complaint, the only issue addressed in there is whether there was retaliation for support of Bayless. Nothing about corruption, bias, anything beyond that. If you look at the pretrial conference order, once again, the only issue is support of Bayless. Nothing about bias. Counsel, once the issue is tried before the jury, then we look at the evidence, the case that was actually tried. The complaint goes away, the pretrial order goes away, and we look at what was actually tried and what was found by the jury. Because if the district court judge let it come in and let it go to the jury, then that's what it is. Well, that's one of the errors in letting it in. Go to the verdict form, though, and I think this is the question. Special verdict. This is page 15 of the defendant's appendix. And it goes on. Do you find that Perez expressed support for Bayless? Do you find that his support was a substantial or motivating factor in the decision not to promote him? Do you find that Perez would not have been promoted for reasons other than support of Bayless? Do you find defendants violated his First Amendment rights to support Bayless? That's it. The only questions ever asked the jury concerned support of Bayless. Never a question to the jury about this. So the issue was not tendered to the jury. Even if the issue did exist, it would not be a basis for liability. Page 48 of the initial brief and combined response brief is the one that cites the evidence on that about what actually happened. At trial? Correct. Okay, and what's the actual part of the record we can go to? Okay, the request for the summary is at page 2-77. Testimony about this being standard procedure is at 5-150. Counsel, my specific question was what was Mr. Bayless' testimony regarding the reaction to his appearance before the grand jury? Now, what page is that testimony on? The complaint about this exhibit of this one, which is Bayless' own complaint about what happened at that meeting. It's exhibit 253. I did have another one which I will come back to. Here we go. Okay, on our reply brief at page 13, I quoted Bayless' own complaint. It's exhibit 24. Counsel, you're not answering my question. Actually, I am. This is Bayless' own statement about summarizing or complaining about what happened at the meeting. This is trial testimony? This is a document Bayless wrote which was put in evidence. But you're not answering my question. I asked you about the trial testimony, but if you want to read that, you may. Okay. According to his own, this is a quoting from Bayless. In a management staff meeting for the department, Mr. Kubota said, where is the written report I directed you to furnish me on the testimony before the grand jury? And he goes on and talks about this one. During the meeting, Mr. Kubota created a hostile work environment because he was angry with me and belittled me in the presence of other supervisors. All he talked about was the tone in asking for the report, not being upset about the substance of anything said. That's an important distinction to be made here. Getting back to the question of whether there was any public interest involved for Perez and Wisnia, leaving out any convictions about bias or anything else because they were not presented to the jury as an issue, is expressing support for a supervisor, which is the only question the jury was asked about, a matter of public concern. Under all the cases cited, no. This is a purely internal grievance matter, and that's all it is. Counsel, let me ask you this. If a supervisor exposed corruption, true corruption, bribery, theft, in the department, and that supervisor was terminated, and co-employees came out in support of that supervisor, solely in support of that supervisor, are you saying that would not be protected activity? I think it depends on... You need more facts to add to that to say yes or no on that one. If all they say is he's a really good supervisor, keep him, and they stop there, no. If they say we support him and he should not have been terminated, what would your answer be? If that's all they say, no. If they are themselves part of exposing corruption, yes. So you're saying if a co-employee supports someone who opposes corruption, and they in turn are terminated for their support, that's not protected activity? That's your argument? If the only support they are making is he's a good supervisor, keep him, that's not public concern. If you have somebody who's a crusader bringing out corruption and they are supporting him in that crusade, then potentially yes. How specific do they have to be in terms... Do they have to say we support him in his fight against corruption, in your view, in order to gain protection? The question goes back to whether the public would be interested legitimately in what they are saying. Or doing. Or do you agree with that? And if all they're saying is we support the supervisor because he's a good supervisor, that's not something of concern to the public. It is simply an internal... I was going to say, do you have a case authority for that proposition? Is there a case you can cite to us for that proposition? As far as all the internal one... No, your proposition that if they just say that he's a good supervisor without expressly incorporating the corruption-fighting activities. I think quite that pinpoint, but a number of cases have talked about internal grievances, internal workplace disputes. There are a number of grievances. I'm unhappy, you know, and they don't give me a job and I'm a genius. You know, I think of Jim Croce's song about trying to get a job at the car wash and they say we don't need any more geniuses. We've got enough of them here. So I'm a genius and they won't promote me. No, that's not protected speech. But when you've got a situation here where you've got a supervisor, possibly, who's being harassed because of activity that he's undertaking and you voice support for him or for his crusade, you're saying that's not a matter of public interest and so there's no First Amendment right there. And I just... Is there a case that supports that? Two responses. Number one, that is not the facts of this case because there is zero evidence that Baylis or Perez said a word about the grand jury testimony to anybody. It has to do with the investigation of Baylis for sexual harassment. Second part... That's not what the jury found, though. There was no evidence that Baylis or Perez said anything to anybody about the grand jury testimony. The part of what the jury does is they determine the credibility of witnesses. In other words, you have people testifying and I hear... I don't want to pick on these people, but Mr. Smith say this. I don't believe him. And Mrs. Jones says that. I don't believe her. I believe Mr. Baylis and Mr. Perez and Ms. Wisniaz. I mean, the jury does those kinds of things. So that's a large part of what they do is how do you source something like this out? Now, again, if it comes to us on summary judgment and the judge does it, okay, here are the affidavits or the declarations or the depositions and I make a decision, that's one thing. But here the jury actually heard conflicting testimony. Both sides, say whatever you want to say. Let's hear all your testimony. And then the jury hears that and says, you know what, I'm going to draw an inference here. I'm going to draw this inference or I'm not going to draw that inference or whatever. And it's not these employment matters are never, I shouldn't say never, but virtually never a black and white matter where, yeah, oh, here it is. Here's the hard evidence of this or that. It's always subjective in people's intent. I agree. The point I was making there is according to Perez and Wisniaz themselves, they never said anything to anybody about the grand jury testimony. All of their speech concerned the investigation of Baylis for sexual harassment. That's an important point to get across. They themselves didn't say that that was an issue. Why is that important? Because to the, well, you were asking the questions about whether expressing support for somebody. And we were talking about whether the support concerns someone who's crusading to expose corruption. That didn't happen. All that happened is we support our supervisor during the investigation of him for sexual harassment. Conducting sexual harassment is not doing anything protected by the First Amendment. So I guess your view or your representation that the investigation encompassed only sexual harassment. It never went into the grand jury purview. It never touched the grand jury issue. Correct. Everything happened. The sexual harassment dated back from about March. The grand jury testimony took place in December, and the termination was very shortly after that. But doesn't it appear that the jury, the trial jury, disagreed with your assertion here? I mean, it seems to me implicitly the trial jury found that there was possibly a connection there. There is zero evidence to support. I don't think the jury ever did that. There's nothing in their findings even questioning that. There's zero evidence that could support that. They rendered a verdict in favor of Mr. Baylis. I agree with that. We're getting a better feel on the evidence here. Just a quick summary on this one. As to Baylis, the only speech he contended was protected by the First Amendment of what happened in front of the grand jury. That happened in December. The termination occurred in January. The evidence showed this was based on an investigation that had gone back to March. Perez and Wisnia never said a word to anyone about the grand jury testimony. We understand your point. You might want to take some time for rebuttal on the cross-appeal. Thank you. All right. All right, Counsel, this is your time for rebuttal on the direct appeal and your response on the cross-appeal. First, to answer your question as to where in the record you find the testimony of Mr. Baylis, in the appellant supplemental excerpt of record at page 331 is Mr. Baylis' trial testimony as to what happened and Mr. Kubota's response. Regarding the grand jury testimony? Yes. Thank you. First of all, I'd like to address the point in regards to the case of Garcetti. Let me just be sure. In your brief on page 3, you say, during a January 11, 2000, supervisors meeting, the defendant, Kubota, became upset upon hearing the information that Baylis reported to the grand jury, and then you cite to the record that you just cited to us again. Yes. Is that statement that I've just read from your brief now, are you saying that that's true? Yes. All right. And that the accusation to the contrary is wrong? Yes. Okay. In regards to the Garcetti case that's currently before the Supreme Court, I think that there are significant differences between a prosecutor who goes in front of a jury or a judge and reports to a supervisor that there was some misconduct by the investigators or the procurement of a search warrant. That I can totally understand as being speech related to the inner workings of your job. That is not the case with Mr. Baylis. His report to the grand jury testimony, he reported a number of different issues as to what had happened, but none of it were the specific inner workings of the job. Some of his complaints addressed issues that he was concerned about with regards to how the Department of Mental Health was operating. In terms of Mr. Perez and Ms. Visnia, if you look at all of their speech as a whole, the overriding interest is the unfairness with which Mr. Baylis was being treated by the supervisors. They were concerned because they witnessed what happened and then they saw the investigators who had totally disregarded what they said. And their allegations were that the investigation was a sham. It was this show that the administration was putting on, but they had a predetermined motive to get rid of Mr. Baylis. And that motive was actually fulfilled. The point of speech is an important issue here, and Poole is instructive on this case in that they had no personal interest in what was going on. Their interest in bringing wrongdoing to light, what was happening to Mr. Baylis, was because they thought it was unfair. And another issue that was raised by opposing counsel is that the speech was not brought to light in terms of the public. And the Supreme Court has repeatedly held, first in Javon, then in Connick, and most recently in Rankin, that it does not need to be taken to the public in order to receive First Amendment protection. I believe that the district court erred when they granted the judgment notwithstanding the verdict and that the jury verdict should be reinstated with regard to Mr. Perez and Ms. Visnia, and that the verdict for Mr. Baylis should stand. Thank you, counsel. Thank you. Now, you do, or do you not, agree with counsel when they argue that the merits of the case of the two other plaintiffs, other than Baylis, have nothing to do with the grand jury testimony? Yes. Their complaints were about the unfairness. So the grand jury testimony and the reaction to it and the merits of that whole thing, as it affects Mr. Baylis' case, has nothing to do with the merits of the other two cases? Well, if you look at it on a timeline, their complaints were here and then the grand jury testimony happened at the end. Totally irrelevant. Totally irrelevant except for the issue of unfairness to Mr. Baylis. One more time. So I want to ask you now, how many positions are you complaining about that your clients were not promoted to? Four. Four. Now, this is the first case I think that comes to mind, where two people are simultaneously claiming that they were overlooked in promotion. Now, obviously, both of them couldn't be hired for the same position, and how do we shake that out? In looking at each of these, when we look at the evidence that you've talked about here, that your clients were better qualified than somebody else. Now, when we have four positions and two people are simultaneously saying, I should have been promoted to each of them, that's what they're saying, are they not? They are. How do we sort that out? Well, because there are four positions and Mr. Perez and Ms. Visnia were the most qualified applicants in all four of those interviews, if you give Perez the job the first time based on his qualifications, then Visnia would have received the second promotion. Okay. Or if not the first, then the second and the third, and so forth. There's more than one action and issue of promotion that was taken in this case. But your issue is the fact that neither of them was given any of the positions supports your claim that there was retaliation against them for supporting Mr. Bayless. That's your argument? That is my argument. Okay. Anything further? No. Thank you, counsel. Thank you. Brief rebuttal. Just a few things as to Perez and Visnia. As to the qualifications, I have laid out in pretty good detail in the brief their qualifications compared to the people who got the positions. They are objectively less qualified. Who's objectively less qualified? Perez and Visnia are objectively less qualified than the people who got the positions. But the jury didn't think that. You know, it has to go back to what? It goes back to the limits of how far a jury can disregard the evidence and come up with a verdict. Objectively according to all the undisputed evidence. There was not a basis for it. We've also laid out that the people who made the decisions are not the defendants. They're not alleged to have been biased. They're not alleged to even have known about these things. Two very brief things. There was a statement previously that Alpern Dick lost interview records. The evidence actually shows in the record his secretary failed to keep it. He destroyed them. Yeah, but Counsel, you would agree that in the event there is an allegation of misdoing in terms of hirings or promotions. When the records mysteriously disappear, that lends some aura of suspicion on the process, doesn't it? Only if the records would have shown something. But how will you know what the records would have shown if they had disappeared? Well, all of the people who were present, including non-defendants involved in the process, testified about the process. There was never any suggestion that they would have shown anything more favorable than that testimony. It's also important to point out there was a statement that Alpern Dick created records. The evidence actually shows in the record, which I cited in here, is that in order to show. He didn't testify to making up anything. He simply said this is a summary of what the evidence was. He was very upright about the whole thing. He never tried to create anything that was a fraud or anything. That's what's been put across. It's very difficult to recreate. I mean, I've been in a position where you interview people for promotions and for hiring. And that's why you make contemporaneous records. Because it's very difficult after the fact to sort out your impressions regarding each candidate. Because they have a tendency to run together after a while. And it's really difficult months after the fact to go back and try to reconstruct what happened during the interview process. That's almost impossible to do from memory. That's one of the four of the interviews. So as a final conclusion, I think the trial court was correct in finding no public speech in this internal grievance. And I also think that as to Bayless, there just is not a factual basis for liability. And I urge the courts to affirm as to Perez and Wisnia in reverses to Bayless. Thank you, counsel. Thank you to both counsel and Ms. Wisnia. I apologize for mispronouncing your name earlier. The case just argued is submitted for decision by the court.
judges: Leavy, Rawlinson, Mahan